JOSEPH W. COTCHETT (Cal. SBN 36324)
STEVEN N. WILLIAMS (Cal. SBN 175489)
**COTCHETT, PITRE & MCCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:   (650) 697-6000
Facsimile:    (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com

GUIDO SAVERI (Cal. SBN 22349)
R. ALEXANDER SAVERI (Cal. SBN 173102)·
CADIO ZIRPOLI (Cal. SBN 179108)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813
guido@saveri.com
rick@saveri.com
cadio@saveri.com

BRIAN J. BARRY (Cal. SBN 135631)
**LAW OFFICES OF BRIAN BARRY**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (323) 522-5584
bribarry1@yahoo.com

*Attorneys for Plaintiff, individually and on
behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION



| | |
|---|---|
| AVRAHAM WAGNER, on behalf of himself and all others similarly situated | Case No. 12 5284 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| EXPEDIA, INC.;<br>HOTELS.COM LP;<br>TRAVELOCITY.COM LP;<br>SABRE HOLDINGS CORPORATION;<br>PRICELINE.COM INCORPORATED;<br>BOOKING.COM B.V.;<br>BOOKING.COM (USA), INC.;<br>ORBITZ WORLDWIDE, INC.;<br>HILTON WORLDWIDE, INC.;<br>STARWOOD HOTELS & RESORTS<br>WORLDWIDE, INC.;<br>MARRIOTT INTERNATIONAL, INC.;<br>TRUMP INTERNATIONAL HOTELS | |

**CLASS ACTION COMPLAINT**

1  | MANAGEMENT, LLC;
HILTON WORLDWIDE, INC.;
STARWOOD HOTELS & RESORTS
2  | WORLDWIDE, INC.;
MARRIOTT INTERNATIONAL, INC.;
3  | KIMPTON HOTEL & RESTAURANT
GROUP, LLC; and
4  | INTERCONTINENTAL HOTELS

5                        Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

**CLASS ACTION COMPLAINT**

1

# TABLE OF CONTENTS

2

Page(s)

I. INTRODUCTION ...........................................................................................................1

II. JURISDICTION AND VENUE.......................................................................................5

III. PARTIES .........................................................................................................................5

A. Plaintiff, Individually and On Behalf of a Class .................................................5

B. Defendants...........................................................................................................6

1. Website Retailer Defendants ...................................................................6

2. Hotel Defendants .....................................................................................7

C. Aiding and Abetting / Conspiracy .......................................................................8

D. Unnamed Participants and Co-Conspirators........................................................9

IV. CLASS ACTION ALLEGATIONS..................................................................................9

V. SUBSTANTIVE ALLEGATIONS .................................................................................12

A. The Website Retailer Defendants Become Indispensable to the
Hotel Defendants...............................................................................................12

B. The Website Retailer Defendants Use their Dominance to Impose the RPM
Scheme and Prevent Discounting.......................................................................15

C. The RPM Scheme Has Purposefully Resulted in "Rate Parity" for Hotel Room
Reservations through the Website Retailer Defendants — Allowing the Website
Retailer Defendants to Always Guarantee the "Best" (Albeit Same) Prices....................22

D. Investigation by Governmental Authorities .......................................................26

VI. MONOPOLY/MARKET POWER ...........................................................................28

VII. MARKET EFFECTS OF AND ANTITRUST INJURY DUE TO...................................29

DEFENDANTS' ANTICOMPETITIVE CONDUCT ...................................................29

VIII. FRAUDULENT CONCEALMENT ...............................................................................30

IX. CAUSES OF ACTION...................................................................................................31

COUNT I.................................................................................................................................31
VIOLATION OF 15 U.S.C. § 1, *et seq.* ...............................................................................31

SECOND CAUSE OF ACTION
VIOLATION OF THE CARTWRIGHT ACT ...............................................................32

THIRD CAUSE OF ACTION

**CLASS ACTION COMPLAINT**                                              ii

VIOLATION OF THE UNFAIR COMPETITION LAW .............................................. 33

FOURTH CAUSE OF ACTION
    VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ............................... 34

FIFTH CAUSE OF ACTION
    VIOLATION OF THE FALSE ADVERTISING LAW .................................................. 36

X.      PRAYER FOR RELIEF ..................................................................................................... 38

DEMAND FOR JURY TRIAL .................................................................................................... 40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                                iii

1    Plaintiff Avraham Wagner ("Plaintiff"), individually and on behalf of the Class described
2    below, bring this action for damages and injunctive relief pursuant to the Sherman and Clayton
3    Antitrust Acts (15 U.S.C. §§ 1, *et seq.*), California's Cartwright Act (Cal. Bus. & Prof. Code §
4    16720, *et seq.*), California's Unfair Business Practices Act (Cal. Bus. & Prof. Code §§ 17200, *et
5    seq.*), California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) and the
6    Consumer Legal Remedies Act (Civil Code § 1750, *et seq.*) against Expedia, Inc. ("Expedia"),
7    Hotels.com LP ("Hotels.com"), Travelocity.com LP ("Travelocity"), Sabre Holdings
8    Corporation ("Sabre Holdings"), Booking.com B.V., Booking.com (USA), Inc. (Booking.com
9    B.V. and Booking.com (USA), Inc. will be referred to as "Booking.com"), Priceline.com, Inc.
10   ("Priceline"), and Orbitz Worldwide, Inc. ("Orbitz") (collectively the "Website Retailer
11   Defendants"), and Hilton Worldwide, Inc. ("Hilton"), Starwood Hotels & Resorts Worldwide,
12   Inc. ("Starwood"), Marriott International, Inc. ("Marriott"), Trump International Hotels
13   Management, LLC ("Trump"), Kimpton Hotel & Restaurant Group, LLC ("Kimpton"),
14   InterContinental Hotels Group Resources Inc. ("InterContinental") (collectively the "Hotel
15   Defendants"). Plaintiff complains and alleges upon information and belief based, inter alia, upon
16   investigation conducted by Plaintiffs and their counsel, except as to those allegations pertaining
17   to Plaintiffs personally, which are alleged upon knowledge:

18                                    **I.    INTRODUCTION**

19       1.     Beginning in the 1990's, online retailers began to sell airplane tickets and hotel
20   room reservations to customers through the Internet, claiming that this was an easy and
21   convenient way to make travel arrangements. The Website Retailer Defendants, over the years,
22   grew their business dramatically as they took over the business that was once handled by travel
23   agencies located in brick and mortar buildings. Over the years, these Website Retailers grew in
24   market power as more and more customers switched to purchasing airline tickets and making
25   hotel reservations through the Internet. With this market power, these Website Retailer
26   Defendants and the Hotel Defendants (who operate most of the major hotel chains throughout the
27   world) entered into an antitrust conspiracy to inflate the price of hotel rooms through agreements
28   known as Resale Price Maintenance ("RPM") agreements. The name of these agreements is self

Law Offices
'OTCHETT, PITRE &
MCCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                            1

1  explanatory.  Instead of actively competing to offer consumers the best possible prices, the

2  Website Retailer Defendants and the Hotel Defendants conspired to inflate the price of hotel

3  room reservations and to preserve their dominant position in the industry against competitors that

4  could offer better prices.

5          2.          The Plaintiff in this case purchased hotel room reservations online directly from

6  one or more of the Website Retailer Defendants in the United States and therefore were injured

7  by the conspiracy entered into by the Website Retailer Defendants and Hotel Defendants.

8  Plaintiff brings this antitrust action as a direct purchaser of hotel room reservations in order to

9  challenge this conspiracy to maintain and/or enforce minimum RPM agreements, to inflate the

10  price of hotel room reservations and to prevent competitors from entering into the industry.

11  Through this action, Plaintiff seeks damages and equitable relief from the Defendants in this case

12  for violations of federal and California antitrust laws.

13          3.          The Website Retailer Defendants are among the dominant online travel

14  companies in California and the United States.  Many of these are well-known companies who

15  claim they are offering the best prices to consumers.  These representations, however, are untrue.

16  In this case, the Website Retailer Defendants, in conjunction with the Hotel Defendants entered

17  into resale price maintenance agreements to achieve the result of fixing the retail price of room

18  reservations ("Rack Rates").  The RPM agreements constitute a conspiracy between the Website

19  Retailer Defendants and Hotel Defendants to fix, maintain and/or inflate Rack Rates and to

20  suppress and restrain competition and trade within the market for online reservations.  The

21  Website Retailer Defendants and the Hotel Defendants entered into specific agreements to fix

22  prices (hereinafter referred to as "Retailer-Hotel Agreements.")  These Retailer-Hotel

23  Agreements included express terms to set, maintain, and enforce minimum prices at the Rack

24  Rates.[1]  The Retailer-Hotel Agreements restrained price competition by requiring the Hotel

25  Defendants to impose, amend, enforce, and/or heighten enforcement of minimum resale price

26  maintenance agreements.  The Hotel Defendants were required to prevent any of online hotel

27

28  [1]      The Retailer-Hotel Agreements are comprised of a combination of contracts and
conspiracies, whether oral or written, express or tacit.

Law Offices
:OTCHETT, PITRE &
McCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                      2

1  retailer to cut their prices or to discount the price of room reservations.  Any attempt by any

2  online retailer to engage in competitive practices that would reduce the retail price of hotel room

3  reservations was suppressed through the active collusion of the Website Retailer Defendants and

4  the Hotel Defendants.

5       4.      Pursuant to the Retailer-Hotel Agreements, the Hotel Defendants were charged

6  with enforcing the RPM conspiracy against online retailers that competed or attempted to

7  compete with the Website Retailer Defendants on price.  These Retailer-Hotel Agreements are an

8  important portion of the anticompetitive conspiracy under which the Website Retailer

9  Defendants and Hotel Defendants entered into an illegal antitrust agreement to: (a) impose

10  minimum RPM agreements between and amongst the Website Retailer Defendants and the Hotel

11  Defendants; (b) enforce these RPM agreements between and amongst the Website Retailer

12  Defendants and the Hotel Defendants; (c) to refuse to supply or cut off supply of hotel rooms to

13  any online retailer that seeks to cut prices or otherwise compete with the Website Retailer

14  Defendants; or (d) ensure that all of the members of the conspiracy charged the same inflated

15  prices for hotel rooms, which constitutes a harm to Plaintiff and the Class.

16       5.      There is a factual basis for the existence of an unlawful and illegal

17  anticompetitive agreement between and amongst the Website Retailer Defendants and the

18  Hotel Defendants.  Defendant Sabre Holding Corporation, which operates Travelocity.com,

19  has admitted that the RPM scheme "is a standard industry practice."  Nancy St. Pierre, a

20  spokeswoman for Defendant Sabre Holding Corporation claimed that this was done to

21  ensure that customers have "confidence that they will get the best rate."[2]  The reality,

22  however, is that these online travel sites have illegally sought to suppress competition in the

23  market for hotel rooms.

24       6.      As a result of the RPM conspiracy, each Retailer-Hotel Agreement with the

25  major hotel chains, including the Hotel Defendants, provides that Room Reservations will not

26  be sold to Plaintiff or Class for less than the Rack Rate.  The Rack Rate becomes the artificially

27

28  [2]      Kann Robinson-Jacobs, "Practice that holds rates steady among Hotel Defendants, travel sites coming under fire," Dallas Morning News (Nov. 16, 2010), reprinted at http://hsmaidfw.blogspot.com/ (last accessed October 8, 2012).

1  set price by which all customers must pay for any hotel room. The Rack Rate is not the result of

2  fair competition but is instead the byproduct of an illegal antitrust conspiracy.

3      7.      Because all of the Website Retailer Defendants have the same clause in most or

4  all of their contracts, whether oral or written, **none** of the Website Retailer Defendants compete

5  with any of the other Website Retailer Defendants on price, and **none** of the Hotel Defendants

6  compete with the other Hotel Defendants on price, at least in regards to the online hotel room

7  reservation market. The retail rates for Room Reservations are set at Rack Rates and thus are

8  virtually identical amongst the Website Retailer Defendants and each of the Hotel Defendants.

9      8.      While the Website Retailer Defendants claim that they have "best price

10  guarantees", this is a misleading statement. Even if a given Website Retailer Defendants is

11  offering the "best price" available, it is only because all of the Website Retailer Defendants and

12  Hotel Defendants have conspired to ensure that there is **only one price**. Therefore, there really

13  is no "best price" but instead there is a fixed price that all consumers pay, a price that is

14  illegally set pursuant to an antitrust agreement between and amongst the Website Retailer

15  Defendants and the Hotel Defendants.

16      9.      If not for Defendants' anti-competitive, illegal and deceptive business practices,

17  Plaintiff and the Class would have paid less for each of the room reservations purchased during

18  the Class Period. This pecuniary injury is the result of an antitrust conspiracy. The direct

19  consequence of Defendants' unlawful conduct was that Plaintiff and the Class paid overcharges

20  on their purchases of room reservations throughout the Class Period. Plaintiff thus seeks

21  monetary damages and equitable relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C.

22  §§ 15(a) and 26, for violations of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1). On

23  behalf of a subclass of California residents who also paid overcharges on their purchase of room

24  reservations during the Class Period, Plaintiff and the subclass bring claims for violation of

25  California's Cartwright Act (Cal. Bus. & Prof. Code § 16720, *et seq.*), California's Unfair

26  Business Practices Act (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), California's False

27  Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) and the Consumer Legal Remedies

28  Act (Civil Code § 1750, *et seq.*)

## II.   JURISDICTION AND VENUE

10.     Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, to recover treble damages, equitable relief, costs of suit and reasonable attorneys' fees for Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15 (a), and 28 U.S.C. §§ 1331 and 1337, because the action arises under the laws of the United States.  This Court also has supplemental jurisdiction over Plaintiff's California state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District under15 U.S.C. § 15(a) and 22, and under 28 U.S.C. § 1391, because one or more of the Defendants resides, is licensed to do business, or is found or transacts business in this District, and a substantial part of the events or omissions giving rise to the Plaintiff's claims arose in this District.  The effect of this conspiracy has the largest impact on the State of California.  The largest number of travelers come from California and California also has the largest tourism industry in the United States.  The Northern District of California is the appropriate venue for this case due to the fact that most of the harm impacts California and one of the Defendants is headquartered in the Northern District of California.

12.     Defendants are subject to this Court's jurisdiction because of their nationwide contacts and other activities, as well as their contacts and other activities with the State of California.  Defendants, through their acts have also directed their activities into the State of California and have caused significant and tremendous harm in the State of California.

## III.   PARTIES

### A.   Plaintiff, Individually and On Behalf of a Class

13.     Plaintiff **Avraham Wagner ("Wagner" or "Plaintiff")** is a resident of the State of California.  During the Class Period, Plaintiff Wagner purchased room reservations for hotel rooms through at least one of the Website Retailer Defendants.  Plaintiff paid an overcharge on that hotel room reservation as a result of the antitrust conspiracy alleged in this complaint.  As such, Plaintiff has suffered actual damages by the conduct alleged herein.

**B.**   **Defendants**

      **1.**   **Website Retailer Defendants**

    14.   Defendant **Expedia, Inc. ("Expedia")** is a Delaware corporation with its principal place of business at 33 108th Avenue NE, Bellevue, Washington 98004.  Expedia is one of the largest online travel company in the world, with an extensive brand portfolio that includes some of the world's leading online travel brands, including Expedia.com®, the world's largest full service online travel agency, with localized sites in 30 countries, Hotels.com®, the hotel specialist with sites in more than 60 countries, Hotwire®, a leading discount travel site that offers opaque deals in nine countries on its eight sites in North America and Europe, Egencia®, the world's fifth largest corporate travel management company eLong™, the second largest online travel company in China Venere.com®, the online hotel reservation specialist in Europe Expedia Local Expert®, a provider of in-market concierge services, activities and experiences in 18 markets worldwide Classic Vacations®, a top luxury travel specialist.

    15.   Defendant **Hotels.com LP ("Hotels.com")** is an affiliate of Expedia. Hotels.com LP is a Texas limited partnership with its headquarters located at 10440 North Central Expressway, Suite 400, Dallas, Texas 75231.

    16.   Defendant **Sabre Holding Corporation ("Sabre")** is a Delaware corporation with its headquarters at 3150 Sabre Drive, Southlake, Texas 76092.  According to their corporate website, Defendant Sabre is a global technology company with more than one billion users around the world.

    17.   Defendant **Travelocity.com LP ("Travelocity")** is a Delaware limited partnership with its principal place of business located at 3150 Sabre Drive, Southlake, Texas 76092.  Travelocity is owned by Defendant Sabre.

    18.   Defendant **Priceline.com Incorporated ("Priceline")** is a Delaware corporation with its principal place of business at 800 Connecticut Avenue, Norwalk, Connecticut 06854.  The Priceline Group provides online travel services in over 180 countries in Europe, North America, South America, the Asia-Pacific region, the Middle East and Africa.  According to its

Law Offices
'OTCHETT, PITRE &
McCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                                                 6

1  corporate website, Priceline is a leader in global online hotel reservations, with over 235,000

2  participating hotels worldwide.

3      19.    Defendant **Booking.com B.V. ("Booking.com")** is a company based in

4  Amsterdam, the Netherlands, with its principal place of business at Herengracht 597, 1017 CE,

5  Amsterdam, Netherlands.  Booking.com B.V. owns and operates Booking.com, the leading

6  worldwide online hotel room reservation retailer by room nights sold, attracting over 30 million

7  unique visitors each month via the Internet from both leisure and business markets worldwide.

8  Booking.com B.V. is a wholly owned subsidiary of Priceline.com Incorporated.

9      20.    Defendant **Booking.com (USA), Inc. ("Booking.com USA")** is a Delaware

10  corporation with its principal place of business at 100 William Street, Suite 750, New York, New

11  York 10038.  Booking.com USA is a wholly owned subsidiary of Priceline.com Incorporated.

12      21.    Defendant **Orbitz Worldwide, Inc. ("Orbitz")** is a Delaware corporation with

13  its corporate headquarters located at 500 W. Madison Street, Suite 1000, Chicago, Illinois 60661.

14  According to its corporate website, Orbitz is a leading global online travel company that uses

15  innovative technology to enable leisure and business travelers to research, plan and book a broad

16  range of travel products.

17      **2.     Hotel Defendants**

18      22.    Defendant **Kimpton Hotel & Restaurant Group, LLC ("Kimpton")** is a

19  Delaware limited liability company with its principal place of business at 222 Kearny Street,

20  Suite 200, San Francisco, CA 94108.Kimpton is one of the largest hotel operators in the world.

21      23.    Defendant **Intercontinental Hotels Group ("Intercontinental")** is a Delaware

22  corporation with its principal place of business at 3 Ravinia Drive, Suite 100, Atlanta, Georgia

23  30346-2149.  Intercontinental operates 4,542 hotels in 100 countries and territories under 9

24  different hotel brands.  According to the company's corporate website, Intercontinental is the

25  leader in 13 of the top 20 markets in the world.

26      24.    Defendant **Starwood Hotels & Resorts Worldwide, Inc. ("Starwood")** is a

27  Maryland corporation with its principal place of business at One StarPoint, Stamford,

28  Connecticut 06902.  One of the world's largest hotel companies, it owns, operates, franchises and

**CLASS ACTION COMPLAINT**                                                                 7

1  manages hotels, resorts, spas, residences, and vacation ownership properties under its nine

2  owned brands across the world.  Starwood's hotels are primarily operated under the following

3  brand names:  St. Regis®, The Luxury Collection®, Sheraton®, Westin®, W®, Le Meridien®,

4  Four Points® by Sheraton, Aloft® and Element®.

5      25.      Defendant **Marriott International, Inc. ("Marriott")** is a Delaware corporation

6  with its principal place of business at 10400 Fernwood Road, Bethesda, Maryland 20817-1102.

7  As of the end of 2009, Marriott operated 3,400 lodging properties in 68 countries and territories.

8  Marriott operates and franchises hotels under the Marriott®, JW Marriott®, The Ritz-Carlton®,

9  Renaissance®, Residence Inn®, Courtyard®, TownePlace Suites®, Fairfield Inn®, SpringHill

10  Suites® and Bulgari® brand names.

11      26.      Defendant **Trump International Hotels Management, LLC ("Trump")**, doing

12  business as The Trump Hotel Collection, is a Delaware limited liability company with its

13  corporate headquarters at 725 Fifth Avenue, New York, New York 10022.  Trump is regarded as

14  one of the leading hotel management companies in the industry.

15      27.      Defendant **Hilton Worldwide, Inc. ("Hilton")** is a Delaware corporation doing

16  business as Hilton Hotels & Resorts with its principal place of business at 7930 Jones Branch

17  Drive, McLean, Virginia 22102.  With 540 hotels and resorts in 78 countries, Hilton prides itself

18  as one of the leading companies in the hospitality industry.

19  **C.      Aiding and Abetting / Conspiracy**

20      28.      Defendants, and each of them, are sued as participants and as aiders and abettors

21  herein alleged.  At all relevant times, each Defendant was and is the agent of each of the

22  remaining Defendants, and in doing the acts alleged herein, was acting within the course and

23  scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of

24  the defendants.  There is a unity of interest and ownership between the Defendants listed above,

25  such that the acts of the one are for the benefit and can be imputed as the acts of the other.

26      29.      Each Defendant entered into or agreed to enter into a conspiracy to do the

27  wrongful acts alleged in this complaint.

28

**CLASS ACTION COMPLAINT**                                                                    8

30.     Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conducted alleged herein.

31.     Whenever this complaint refers to an act, deed or transaction of a corporation or entity, this complaint is alleging that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation or entity's business affairs.

**D.     Unnamed Participants and Co-Conspirators**

32.     Numerous individuals and entities participated actively during the course of and in furtherance of the scheme described herein. The individuals and entities acted in concert by joint ventures and by acting as agents for principals, in order to advance the objectives of the scheme to benefit Defendants to the detriment of the Plaintiff and the Class.

## IV.     CLASS ACTION ALLEGATIONS

33.     This action is brought by Plaintiff, individually and on behalf of all others similarly situated, pursuant to the Sherman and Clayton Antitrust Acts (15 U.S.C. §§ 1, *et seq.*),California's Cartwright Act (Cal. Bus. & Prof. Code § 16720, *et seq.*), California's Unfair Business Practices Act (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) and the Consumer Legal Remedies Act (Civil Code § 1750, *et seq.*)  Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated.

34.     The Class is defined as followed: Pursuant to Rule 23 of the Federal Rules Of Civil Procedure, Plaintiff brings this class action on behalf of him/herself and all members of the following class (the "Class"):

> All persons and entities throughout the United States who paid for a room at a Hotel Defendant reserved through the Website Retailer Defendants. Expressly excluded are (i) room reservations made as part of a package deal; or (ii) room reservations made without disclosure of the name of the hotel until after paying for the room reservation.

35. Pursuant to Rule 23 of the Federal Rules Of Civil Procedure, Plaintiff bring this class action on behalf of him/herself and all members of the following subclass (the "California Class"):

> All persons and entities throughout the State of California who paid for a room at a Defendant Hotel reserved through the Website Retailer Defendants. Expressly excluded are (i) room reservations made as part of a package deal; or (ii) room reservations made without disclosure of the name of the hotel until after paying for the room reservation.

36. Plaintiff believes that the Class and California Class include thousands of consumers and businesses across the United States, though the exact number and the identities of the Class members are currently unknown. The amount of hotel reservations being done through the Internet, principally through the Website Retailer Defendants has increased dramatically over the years. Plaintiff believes that there are hundreds if not thousands of reservations being made with the Website Retailer Defendants on a daily basis. As such, the members of the Class and California Class are so numerous that joinder of all Class members is impracticable.

37. Common questions of law and fact exist as to all members of the Class and California Class and predominate over any questions affecting solely individual members of the Class and California Class. Nearly all factual, legal, and statutory relief issues raised in this complaint are common to each of the members of the Class and California Class and will apply uniformly to every member of the Class and California Class. Among the questions of law and fact common to Class and California Class members are:

a. whether Defendants engaged in agreements, contracts, combinations, and conspiracies, which had the purpose and/or effect of unreasonably restraining competition and limiting purchaser access to competing and lower-priced Room Reservations;

b. whether Defendants unreasonably restrained trade;

c. whether Defendants' anti-competitive contracts, combinations, and conspiracies have caused Plaintiff and the other members of the Class and California Class to suffer antitrust injury in the nature of overcharges;

1          d.      whether Defendants' conduct constitutes fraudulent, unfair or

2    unlawful business practices;

3          e.      whether Defendants' engaged in a campaign of systematic

4    misrepresentations regarding the pricing of hotel room reservations and whether or not they

5    were in fact providing "best prices" for hotel rooms reservations;

6          f.      whether Defendants' unlawful conduct caused Plaintiff and other Class

7    and California Class members to pay more for the hotel room reservations than they otherwise

8    would have paid;

9          g.      the appropriate Class-wide measure of damages for hotel room reservation

10   overcharges;

11         h.      whether, and in what amount, Plaintiff and the other Class and California

12   Class members are entitled to recover treble damages, court costs, and attorneys' fees;

13         i.      whether Defendants' anti-competitive conduct is continuing, thus

14   entitling the Class and California Class to injunctive relief to promote unrestrained trade and

15   free and fair competition;

16         j.      whether Defendants' fraudulent, unfair and unlawful business practices

17   are continuing, thus entitling the Class and California Class to restitution and/or injunctive

18   relief to preclude the Defendants from continuing to engage in such wrongful business

19   practices.

20   38.    Plaintiff's claims are typical of the claims of other members of the Class and

21   California Class because Plaintiff and every member of the Class and California Class have

22   suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no

23   interest adverse to the interests of the other members of the Class and California Class.

24   Plaintiff, like the other members of the Class and California Class has suffered actual harm

25   from paying inflated prices for hotel room reservations.

26   39.    Plaintiff will fairly and adequately represent and protect the interests of the

27   Class and California Class. Plaintiff has retained able counsel with extensive experience in

28   class action litigation. The interests of the Plaintiff are coincident with, and not antagonistic to,

1   the interests of the other Class and California Class members.

2       40.     The questions of law and fact common to the members of the Class predominate
3   over any questions affecting only individual members, including legal and factual issues
4   relating to liability and damages.

5       41.     Plaintiff and other members of the Class have suffered damages as a result of
6   Defendants' unlawful and wrongful conduct. Absent a class action, Defendants will retain
7   substantial funds received as a result of their wrongdoing, and such unlawful and improper
8   conduct shall, in large measure, go unremedied. Absent a class action, the members of the
9   Class will not be able to effectively litigate these claims and will suffer further losses, as
10  Defendants will be allowed to continue such conduct with impunity and retain the proceeds of
11  its ill-gotten gains.

12      42.     A class action is superior to other available methods for the fair and efficient
13  adjudication of this controversy because joinder of all Class members is impracticable.

14      43.     Moreover, because the damages suffered by individual members of the Class are
15  relatively small, the expense and burden of individual litigation make it impossible for members
16  of the Class to individually redress the wrongs done to them. A class action is a superior method
17  for the fair and efficient adjudication of this controversy since there is an interest in preventing the
18  Defendants in this case from engaging in a widespread and systematic conspiracy that reduces
19  competition and negatively impacts consumers.  The Class is readily definable, and prosecution
20  of this action as a class action will eliminate the possibility of repetitious litigation. There will be
21  no difficulty in the management of this action as a class action.

22          **V.     SUBSTANTIVE ALLEGATIONS**

23  **A.    The Website Retailer Defendants Become Indispensable to the Hotel
            Defendants**
24

25      44.     As recently as 1997, the concept of an "internet travel company" or Online
26  Retailer — an entity organized to effectuate travel plans, reservations and purchases via the
27  worldwide web — was virtually unknown. Since that time, however, the internet travel
28  industry has exploded.  By some estimates, more than half of all hotel bookings in the

1  United States are made online, many through internet travel companies owned by the
2  Website Retailer Defendants.  The Website Retailer Defendants in this case are the largest
3  internet travel retailers.

4      45.    Through their web portals, the Website Retailer Defendants provide customers
5  access to many services, including airline tickets, hotel rooms and car rentals.  One of the key
6  services provided to customers is the ability to rent hotel rooms online in many different hotels
7  throughout the country and the world.  The Website Retailer Defendants claim to provide
8  access to the major hotel chains in the world, which they do.  However, the Website Retailer
9  Defendants conspire with the Hotel Defendants to manipulate the price of hotel room
10 reservations.  The Website Retailer Defendants offer their services to Hotel Defendants and
11 consumers through several different business models, including the "Agency Model," the
12 "Merchant Model,"[3] and/or the "Wholesale Model."

13     46.    Under the Agency Model, the online travel retailer charges a "service fee" to
14 hotel operators on a transaction-by-transaction basis for booking customers into rooms at a
15 given hotel and the consumer pays the hotel for the room directly.  Under the Agency Model,
16 the hotels should be setting — and the online travel retailer should be requiring -- a competitive
17 price for Room Reservations to increase business and compete against other Online Retailers
18 offering the same service.  In other words, the online travel retailer act as agents for the Hotel
19 Defendants and get a fee for every room reservation acquired.

20     47.    Under the Merchant Model, the online travel retailer does not function merely
21 as a service provider collecting a fixed transaction fee from the hotels.  Rather, the Merchant
22 Model consists of two independent but related transactions whereby an internet travel
23 company: (1) first purchases and takes title to inventories of hotel rooms at negotiated rates
24 from the Hotel Defendants ("wholesale" rates); and (2) then re-sells the rooms to consumers
25

26 [3]    The Agency Model and the Merchant Model are described in the 2002 annual report of
   Defendant Expedia, Inc. as filed with the Securities and Exchange Commission on Form 10-K
27 on March 31, 2003, and the 2004 Annual Report on Faun 10-K as filed with the SEC of
   IAC/Interactive Corp. (the parent company, at that time, of Expedia.com, Hotwire.com and
28 Hotels.com), p. 9.

**CLASS ACTION COMPLAINT**                                                    13

at higher retail, keeping the difference as profit. Under this Merchant Model, the online travel retailers should be competing on price by increasing or decreasing the margin added to the wholesale rates to set the retail rate. For example, one online travel retailer could cut their margins and charge a lower retail rate in order to get more customers.

48.     The third model is the "Wholesale Model," whereby smaller price-cutting online travel retailers obtain access to rooms through wholesalers. Wholesalers, or intermediaries between the online travel retailers and the hotels, work directly with Hotel Defendants to obtain last minute blocks of rooms that need to be filled. The wholesalers then make those rooms available to smaller online travel retailers at a wholesale rate. The online travel retailers then, like in the Merchant Model, re-sell the rooms to consumers at higher retail, keeping the difference as profit. Under this Wholesale Model, just like in the Merchant Model, the online travel retailers can compete for customers through price competition. Online travel retailers can increase their sales by reducing their margins.

49.     Originally, by using the Agency Model and Merchant Model, the Website Retailer Defendants gained a dominant presence in the online sale of hotel room reservations. The Website Retailer Defendants now hold more than a 50 percent market share in the internet travel business market. Expedia and its subsidiaries alone account for approximately 50% of the internet travel business market. Moreover, over time, the Website Retailer Defendants have become increasingly important to the Hotel Defendants' business — generating as much as 50% of the Hotel Defendants' room reservation traffic. The Hotel Defendants cannot remain in business if they ignore the Website Retailer Defendants. Thus, the Hotel Defendants are forced to accede to the demands of the Website Retailer Defendants in order to maintain access to the Website Retailer Defendants' distribution network.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**B.     The Website Retailer Defendants Use their Dominance to Impose the RPM Scheme and Prevent Discounting**

50.     As a result of their dominance, and knowing that the Hotel Defendants cannot afford to lose access to their distribution network, the Website Retailer Defendants devised an illegal RPM scheme to combat new or more efficient online travel retailers, including those that obtained access to hotel rooms through the Wholesale Model, by extracting from the Hotel Defendants agreements from them that required, on penalty of termination, and as a condition of continuing to do business with the Website Retailer Defendants, that the Hotel Defendants would not allow competing online travel retailers from discounting hotel room reservation rates below the Rack Rate.

51.     These illegal agreements between the Website Retailer Defendants and the Hotel Defendants are and were part of an overall agreement to impose and enforce the RPM scheme. For example, in 2004, multiple hotels, including Defendants Hilton and Kimpton, and several of the Website Retailer Defendants, including Defendant Priceline, met together in Las Vegas for EyeforTravel's Second Annual Revenue Management and Pricing in Travel Conference.[4] At the conference, Defendants Hilton, Kimpton and Priceline discussed "rate parity" and "pricing strategies." In fact, Jimmy Shu, VP Revenue Management and Distribution at Defendant Kimpton led a presentation to "address the issues associated with adapting rate parity across all distribution channels...." EyeforTravel has annually sponsored these conferences, and the attendees have expanded to include nearly all of the Defendants.[5]

52.     The Hotel Defendants complied with these illegal agreements by requiring that any potential competing online agree to raise and maintain retail prices for hotel room reservation at the Rack Rates. Moreover, in order to ensure compliance with these illegal agreements, the Website Retailer Defendants, and in some instances the Hotel Defendants, threatened online travel retailers with legal action and/or refused to allow online travel

---

[4]     http://events.eyefortravel.com/revenue-management/ (last accessed October 8, 2012).

[5]     http://events.eyefortravel.com/travel-distribution-summit-north-america/past-attendees.php (last accessed October 8, 2012).

1  retailers, such as Skoosh.com, to sell hotel room reservations if the online travel retailers

2  refused to maintain resale prices at the Rack Rate in compliance with the RPM scheme.

3  Further, pursuant to their agreement with the Website Retailer Defendants, in some

4  instances, the Hotel Defendants required the wholesalers to stop providing rooms to price-

5  cutting online travel retailers, such as Skoosh.com, if they refused to maintain resale prices

6  at the Rack Rate.  These are only some of the mechanisms used by the Website Retailer

7  Defendants and the Hotel Defendants to engage in price fixing and anticompetitive behavior

8  to prevent competition in the market for hotel room reservations.

9        53.    Skoosh.com has publicly complained that it tried to sell discounted hotel room

10  reservations on its online travel site but was thwarted by the illegal RPM scheme:

11              'We were openly discounting and hotels would email, call
              and threaten legal action,' Skoosh told the BBC.
12
              'Either we'd have to raise prices or take the hotels off our list,'
13              said Dorian Harris from Skoosh.[6]

14        54.    In fact, Skoosh has claimed that these illegal agreements amongst and

15  between the Website Retailer Defendants and the Hotel Defendants have "created a Mafia-

16  style atmosphere and an intolerable climate for new businesses.  Skoosh has been directly

17  threatened and, in turn, has defended its right to discount hotel prices."[7]

18        55.    Skoosh.com published a letter dated August 31, 2010, from its CEO to

19  Skoosh's competitor Booking.com, one of the Defendants, complaining about Booking.com's

20  enforcement of the Retailer-Hotel Agreements.  The letter states, in part:

21              Both personally, and even as a direct competitor, I was always
              a fan of Booking.com. Yours was one of the better hotel
22              booking sites I always thought, with some innovative features.
              However, my rosy picture fast disappeared last winter when
23              Skoosh started being pursued by your business partners
              insisting that we raise our hotel prices to the same as yours. I'm
24              hoping you can find the time to address some of the points
              below and restore my faith in your company.
25

26  _____

27  [6]      http://www.bbc.co.uk/news/business-11330463 (last accessed October 8, 2012).

28  [7]      http://www.tnooz.com/2012/07/31/news/regulator-accuses-expedia-booking-com-and-ihg-in-hotel-competition-infringement-probe/ (last accessed August 5, 2012).

Law Offices
:OTCHETT, PITRE &
MCCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                      16

Some background then. Earlier this year we started getting some calls from angry and confused hoteliers insisting that we were selling their rooms too cheaply. I called them back to work out what was going on and they mostly told me that Booking.com had been on to them threatening all sorts of nonsense if they didn't either remove their hotel from Skoosh or force Skoosh to raise its prices.

I wondered how this was all happening so quickly and then I did a little research and found that Booking.com has an active policy of maintaining the same prices for all companies across the internet. I even found a job ad of yours looking for 'Rate Parity Associates'. It seems like you've got a whole team out there beavering away to 'find any rate inconsistencies between Booking.com and their competitors.' They're doing a good job I have to say. The hoteliers you work with are certainly concerned. One wrote to ask me to close out their hotel on Skoosh: 'just to avoid the penalty that Booking.com is threatening us about'.

Some were less friendly. Many of the hoteliers wrote letters to me threatening legal action. One of them had a colleague of yours on one line and me on the other. It seemed that your colleague was insisting that if we hadn't removed their hotel from Skoosh by the end of the phone call <u>Booking.com</u> would cancel the contract with them. They were very scared.[8]

56.   The fact that Booking.com has threatened to cut off the sale of hotel room reservations for Hotel Defendants that do not enforce the RPM scheme is consistent with the Rate Assured Hotel Program implemented by Booking.com's parent, Defendant Sabre (which also owns Defendant Travelocity). Sabre's Rate Assured Hotel Program requires the Hotel Defendants to enforce the RPM scheme:[9]

For Suppliers

**Sabre Rate Assured™ Hotel Program**

Are you *Rate Assured?*

*Sabre Travel Network* has already begun measuring properties to validate rate parity across properties prior to the official launch. So make sure your properties are rate compliant!

   (b) If it is determined that a property is not providing rate parity in the program, it will essentially be placed on "Probation" status.
   (c) If a property is not providing rate parity in the subsequent measurement, *Sabre* will consider the hotel "In Violation"…

[8]   http://dorian.skoosh.com/open-letter-to-kees-koolen-ceo-at-booking-com/ (last accessed, October 8, 2012).

[9]   http://dorian.skoosh.com/open-letter-to-f-t-c-chairman-jon-leibowitz/ (last accessed October 8, 2012).

1    Defendant Hilton required Skoosh.com's wholesale supplier in the United States,

2  AlliedTPro, to entirely cut off its contract with Skoosh.com as a result of Skoosh.com's

3  discounting and Defendant Hilton's enforcement of the Retailer-Hotel Agreements.

4  AlliedTPro wrote to Skoosh.com: "Trust me I would welcome the additional business but

5  cannot risk our contracts with Hilton."[10]

6    Defendant Trump expressly admitted it was enforcing the Retailer-Hotel Agreements,

7  emailing Skoosh.com:[11]

8
9
10
11
12
13
14

> **From:** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
> **Sent:** 10 May 2010 18:27
> **To:** Dorian Harris
> **Subject:** RE: New Inquiry was submitted on Skoosh.com
>
> The simple answer is; if we do not maintain parity with all, we are threatened with poor placement on sites and worst case... removal of hotel from sales sites. That is the way the OTA's operate in USA. Expedia threatens if Travelocity gets lower rate and vice-versa. It is a vicious cycle if we get out of parity.
> I think the model in Europe is built to operate more competitively but that is not the model here. (Much as I wish it was the same as Europe!) I hope this helps you understand why we must be strict with what is offered on all websites.
> Thanks,
>
> ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
> Trump International ▆▆▆▆▆▆▆▆

15    Defendant Intercontinental wrote to Skoosh.com "demanding that Skoosh either raise[]

16  its rates to the same as the hotels and its other distribution partners (a practice known in the

17  industry as 'rate parity') or remove the hotels entirely from our site."[12]

18  In 2003, Defendant Marriott announced "a sweeping overhaul of its transient pricing, bringing

19  parity to all Marriott distribution channels — offline and online."[13] During the Class Period,

20  Marriott was among the Hotel Defendants threatening Skoosh.com with legal action and/or the

21  withdrawal of their hotel room reservations if Skoosh.com did not maintain rate parity.  Rate

22
23

---

24  [10]    http://dorian.skoosh.com/open-letter-to-f-t-c-chairman-jon-leibowitz/ (last accessed October 8, 2012).

25  [11]    http://dorian.skoosh.com/open-letter-to-f-t-c-chairman-jon-leibowitz/ (last accessed October 8, 2012).

26  [12]    http://dorian.skoosh.com/open-letter-to-william-baer-arnold-porter-llp/ (referring to Holiday Inn New York) (last accessed October 8, 2012).

27
28  [13]    http://www.businesstravelnews.com/More-News/Marriott-Revamps-Pricing--Offers-Complete-Parity,-Curtails-Fixed-Consortia-Rates/?a=btn (last accessed October 8, 2012).

parity means nothing less than illegal price fixing that causes injury to consumers by reducing competition in the market for hotel room reservations.

Defendant Starwood also enforces the RPM scheme. "In one email to a hotel discounter, an executive at Starwood, which runs Le Meridien, Westin, W and Sheraton hotels, said: 'Should a wholesaler decide to sell the rooms on a room only basis, he has to make sure that the per contract agreed minimum mark-up is guaranteed.' The employee said the 'violation' of Starwood's Best Rate Guarantee was 'really serious' and the breach was reported to the Brussels headquarters."[14]

57.     Similarly, Kayak.com, which is a price comparison website, told Skoosh.com on several occasions that it had to "play the Orbitz game,"[15] *i.e.* maintain rate parity, or Kayak would no longer publish Skoosh.com's prices. Kayak advertises itself as the company that can help a consumer choose between the Website Retailer Defendants and other online travel retailers to find the best prices, including the best prices for hotels. Kayak, however, apparently felt pressured to enforce rate parity on behalf of the Website Retailer Defendants because, for example, Orbitz accounted for 18.8% of Kayak's total revenues and Expedia and its affiliates accounted for 24.9% of Kayak's total revenues for the nine months ended September 30, 2010.[16] After Skoosh.com reported the RPM scheme to governmental authorities, Kayak stopped publishing Skoosh.com's prices on its price comparison site. In other words, Kayak, which promised consumers it would find the best prices amongst the Website Retailer Defendants was part of the conspiracy, ensuring that the same manipulated prices were being offered to all consumers.

58.     Each of this occurred because of the illegal and anticompetitive pressure the Website Retailer Defendants were placing on Hotel Defendants to protect the Website Retailer Defendants' margins by enforcing the RPM scheme. The Hotel Defendants enforced

[14]     http://www.telegraph.couldfinance/newsbysector/retailandconsumer/8467755/Hotels-faceinquiry-in-price-fixing-scandal.html (last accessed October 8, 2012).

[15]     http://dorian.skoosh.com/open-letter-to-steve-hafner-c-e-o-kayak-com/ (last accessed October 8, 2012).

[16]     http://www.businessinsider.com/kayak-ipo-2010-11 (last accessed October 8,, 2012).

1   the RPM scheme because they feared losing access to the Website Retailer Defendants'

2   website to sell their rooms if they did not. As one industry consultant explained:

3
        'I don't know that there's been enough public questioning of this
4       [rate parity] practice,' said AshwinKamlani, founder of Hotel
        Internet Help Inc., which helps independent hotels get more sales
5       via cyberspace.

6       'The hotels enforce rate parity because they fear the
        consequences of not maintaining rate parity,' he said. 'They fear
7       having their hotel dropped to page 6 or even pulled off their
        largest producing [onlinetravel agents] sites, which translates into
8       a potentially significant loss of revenue.'[17]

9        59.    Blink Booking, a mobile-only hotel booking service, echoed the claims of

10  competing online travel retailers, saying: "We've long believed that the big online travel

11  agents have been guilty of denying consumers the best prices — and that hotels' hands are

12  tied by price parity agreements. The online travel market may appear to offer plenty of

13  choice and competition, but the reality is that there are lots of different shop windows

14  selling the same rooms at the same prices — with those prices agreed through parity deals

15  between the big groups and the big OTAs [online travel agents]."[18]

16       60.    The Hotel Defendants were active participants in the conspiracy because they

17  knew that the Website Retailer Defendants would enforce the illegal agreements. The Hotel

18  Defendants could draw upon their own past experience to know that the Website Retailer

19  Defendants were serious about enforcing the conspiracy.  For example, in 2009, Defendant

20  Expedia refused to list or sell hotel room reservations from Choice Hotels.  Expedia's CEO

21  and President Dara Khosrowshahi explained:

22
        '...As far as the discussions that we've had with Choice, we are not
23      doing business with Choice right now on a chain basis. We don't
        have a vast majority of Choice hotels on our side,' said
24      Khosrowshahi

25  _____

26  [17]    Karin Robinson-Jacobs, "Practice that holds rates steady among Hotel Defendants, travel
        sites coming under fire," Dallas Morning News (Nov. 16, 2010), reprinted at
27      http://hsmaidfw.blogspot.com/ (last accessed August 15, 2012).

28  [18]    http://www.telegraph.co.uk/finance/newsbysector/retailandconsumer/leisure/9441235/
        OFT-alleges-Intercontinental-Hotels-online-deals-broke-competition- law.html (last accessed
        October 8, 2012).

...he added, 'First of all, our primary goal is to have the broadest, deepest set and highest quality set of inventory for the benefit of our customers. And this doesn't signal any kind of change in our overall philosophy as far as how we work with our hotel partners and what we're looking at. It's not really an issue of economics; it's more than issue of our wanting rate parity and inventory parity for our customers.'

'When our customers come to Expedia, we want them to know that they're getting the best prices and certainly, we are insistent on that. And to the extent that Choice doesn't want to work under those terms. We won't be doing business with each other. Those are the terms that we work with our others strategic partners, they're comfortable where they were comfortable with it. So, it's nothing usual from what I would say is typical practice for us in most of our other OTA competitors so to speak.'[19]

61. Through this conspiracy, the Website Retailer Defendants sought and received agreements from the Hotel Defendants that they would only sell hotel room reservations to those online travel retailers who would not discount the Rack Rates, even if and when it reduced the Hotel Defendants' sales and/or profits by slowing sales of the hotel room reservations.

62. More specifically, the Hotel Defendants agreed to work with the Website Retailer Defendants to implement and enforce the RPM scheme to ensure that pricing by competing Online Retailers be restrained.

63. The Website Retailer Defendants sought and obtained the agreement of the Hotel Defendants to impose and enforce "rate parity" — *i.e.,* restraint on price competition — solely for the Website Retailer Defendants' benefit and not for any legitimate pro-competitive reason.

64. The Website Retailer Defendants are driven to maintain their dominant position in the online travel market and to maintain their high profit margins, as their margins are being threatened by newer, more efficient online travel retailers. That dominant retailers, like the Website Retailer Defendants, have reacted and are reacting in an anticompetitive manner to threats to their pricing power, such as those posed by new or more efficient online travel retailers. The United States Supreme Court has recognized that the behavior of the Website

---

[19] http://www.eyefortravel.com/distribution-strategies/expedia-stresses-rate-parity-and-inventory-parity-its-customers (last accessed October 8, 2012).

Retailer Defendants and the Hotel Defendants here constitutes a violation of federal antitrust laws.

65.     The United States Supreme Court not only recognized that minimum resale pricing may be imposed by a dominant retailer for that retailer's benefit, but stated that such behavior violates the antitrust laws. Indeed, the United States Supreme Court cautioned that:

> [r]esale price maintenance, furthermore, can be abused by a powerful manufacturer or retailer. A dominant retailer, for example, might request resale price maintenance to forestall innovation in distribution that decreases costs. A manufacturer might consider it has little choice but to accommodate the retailer's demands for vertical price restraints if the manufacturer believes it needs access to the retailer's distribution network. *See* Overstreet 31; 8 P. Areeda& H. Hovenkamp, Antitrust Law 47 (2d ed. 2004) (hereinafter Areeda&H. Hovenkamp); *cf. Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 937-938 (7th Cir. 2000).

                              * * *

> As should be evident, the potential anticompetitive consequences of vertical price restraints must not be ignored or underestimated.

*Leegin Creative Leather Prods., Inc. v. PKS, Inc.*, 127 S. Ct. 2705, 2719-2720 (2007).

## C.     The RPM Scheme Has Purposefully Resulted in "Rate Parity" for Hotel Room Reservations through the Website Retailer Defendants — Allowing the Website Retailer Defendants to Always Guarantee the "Best" (Albeit Same) Prices

66.     The RPM Scheme has achieved its illegal goal: Website Retailer Defendants do not compete on the basis of price for hotel room reservations. Rather, all online sales of hotel room reservations for the same rooms are at the Rack Rate.

67.     Deposition testimony of Tim Gordon, Senior Vice President, of Priceline makes clear that each of the Website Retailer Defendants buys the rooms and sells the rooms to the public at exactly the same price:

> Q.     And in fact, sir, let's take a look at ALL22. And this is a printout I did back in September for a night's stay at the Hilton in San Antonio .... $219 rate, taxes and then a total. And then if you will look through, I've printed out from the various websites of the defendants, same hotel, same night. Orbitz has its $219.00 rate. Cheap Tickets has its $219.00 rate. Lowest Fare has a $219.00 rate. Priceline, $219.00 rate. Travel Now, $219.00. Expedia, $219.00. And Hotels.com, $219.00. Every website lists this room on this night at the exact same room rate. And you know — you know, based upon the

1

       way the contracts work, that doesn't surprise you, does it?

2

  A.   No.

3

  Q.   And why doesn't that surprise you?

4

5

6

  A.   Because in general — and I can't be too specific because I don't know the exact terms of this agreement, but in general the contracts require us to take a net rate that they provide and mark it up by a specific amount. And they require us to mark it up by that amount.

7

  Q.   By that exact amount?

8

  A.   Yes.

9

10

11

  Q.   And your understanding is that you have best price guarantee from Hilton where they can offer your competitors more heavy discounts than they can offer Priceline, correct?

12

  A.   That is true.
          \* \* \*

13

14

15

  Q.   All right. And so given the Most Favored Nations Clause that Hilton has, your understanding would be everybody — all these competitors are being provided this room at the same price and marking it up by the same amount resulting in the same retail rate, correct?

16

  A.   I believe that to be true.

17

68.   In fact, a federal court in the Western District of Texas recently commented

18

on the similarity of the business models and pricing structures of the Website Retailer

19

Defendants:

20

21

22

23

24

25

26

27

28

> After reviewing the record, it is clear that the Defendants not only engage in a common course of conduct, but that many of their business practices are virtually identical. These practices include but are not limited to the manner in which they contract with the Hotel Defendants, the manner in which they determine and assess cancellation policies and fees, the <u>manner in which they determine the mark up and fees to arrive at an acceptable margin and retail/sell rate;</u> and, the manner in which they calculate, assess and pay hotel occupancy taxes. The deposition testimony of the corporate representatives, standing alone, reflects an amazing similarity in practice, procedure and corporate methodology among all of the [Website Retailer Defendants]. <u>Memorandum and Opinion on Class Certification,</u> *City of San Antonio v. Hotels. corn, et al.,* No. SA-06- CA-381-OG (W.D. Tex) (the "San Antonio Class Cert Order") at 1819 (emphasis added).

**CLASS ACTION COMPLAINT**      23

69.   The Court determined, based upon deposition testimony, that the margins of each of the Website Retailer Defendants were identical to the other Website Retailer Defendants:

> Almost without exception, the net rate and sell rate for a given room on a given day are the same among the [Website Retailer Defendants] because the Defendants' agreements with the Hotel Defendants all contain "parity" or "Most Favored Nation" clauses.

> This also makes the [ITC] margins the same. *Id.* at 20, n. 21 (citations to deposition testimony omitted).

70.   That the rate parity stems from the illegal RPM scheme is evident. The Website Retailer Defendants employ "market managers" who "monitor closely a hotel's rates across all channels, and if a preferential rate was given to one over the other that hotel could face dire penalties."[20]  In fact, as Hotel Defendants started experimenting with price discounting by offering "tiered pricing," the Website Retailer Defendants started to demand Hotel Defendants stop competing with online retailers on price.

71.   An industry expert recounts that Hotel Defendants seeking to promote price discounts in order to have consumers buy directly from the hotel were met with the Website Retailer Defendants demanding price competition cease. According to the industry source, "Hilton, for example, is promoting like crazy to get the customer to book direct. 'Book with us and get 500 extra points or free Internet.' But this competition was unacceptable to the Website Retailer Defendants and contrary to the RPM scheme. "That's where the [Website Retailer Defendants] were forced to become big proponents of rate parity." So the Website Retailer Defendants ensured that the Hotel Defendants could not "undercut," *i.e., price compete,* by entering into Defendant Retailer-Hotel Agreements and the RPM scheme.

72.   As a result of the "success" of the RPM scheme, the Website Retailer Defendants are confident that all of the prices listed between them for the same room will be identical. Thus, they each offer a near identical "best price" guarantee — knowing it is the **only price** available,

---

[20]   http://www.hotelnewsnow.com/Articles.aspx/8469/Revenue-managers-predict-end-of-OTAs-parity (last accessed October 8, 2012)

1   even among competitors.  The following are examples of the "guarantees" offered by the major

2   Website Retailer Defendants:

3        a.      **Travelocity's Guaranteed Low Prices**



9        b.      **Expedia's Best Price Guarantee**



16       c.      **Booking.com Best Price Guarantee**

### Best Price Guaranteed

We promise that when you book with us, you'll get the lowest possible price for your room. Guaranteed.

21       d.      **Hotels.com Price Match Guarantee**

# Price Match

The hotels.com Price Match Guarantee protects your pocket book and takes the worry out of booking a hotel room. After you book with hotels.com, if you find a lower publicly available rate online for the same dates, hotel, and room category, we will match the price and refund you the difference.

### e.   Orbitz Low Price Guarantee

**ORBITZ**

**Orbitz Low Price Guarantee**

Look for our hotel and car rates backed by our Low Price Guarantee. We're so confident they're the lowest online, we're willing to put money on it.

**Hotel Low Price Guarantee Terms and Conditions:**

If you book a qualifying prepaid hotel rate on the Orbitz Web site, and then find the same room, in the same hotel, for the same dates, at a lower price online, before taxes and fees, we'll refund the difference and give you a $50 discount on a future hotel booking.

73.   Absent the RPM scheme, the Website Retailer Defendants could not offer the best price guarantees unless they engaged in price competition and discounted the Rack Rates.

74.   The RPM Agreements, and the scheme in restraint of trade, have harmed competition in the relevant market(s) and caused prices to be higher in the relevant market(s) then the prices would have been without the Agreements.

75.   In addition, the uniform adoption and enforcement of "rate parity" and most favored nation clauses by the Website Retailer Defendants is a horizontal *per se* price fixing agreement.

76.   The Agreements were specifically intended to protect the Defendants from price competition — both from Hotel Defendants and other highly efficient retailers — offering the same inventory. Thus, Defendants agreed to restrain competition by mandating higher price levels and thereby suppressing the competition or by eliminating the price cutting entirely. This RPM scheme achieved its goals, and thereby substantially inflated prices to consumers like Plaintiffs.

### D.   Investigation by Governmental Authorities

77.   This price-fixing conspiracy is evidently not confined to the United States. The British Office of Fair Trade ("OFT") recently issued a "Statement of Objections" alleging that Expedia, Inc. infringed competition through the very same price fixing agreements with respect to British hotel rooms. The *Telegraph* reported that Expedia admitted that "it has engaged in cartel conduct on breach of the law," and is "providing information on its rivals under a 'leniency deal' with the British authorities."

78.     This conspiracy is not limited to the United Kingdom.  The Website Retailer Defendants are entering into contracts with the same Hotel Defendants in the United States of America, which are causing the same anticompetitive effects here.  These illegal Retailer-Hotel Agreements are part of an anti-competitive scheme under which the Website Retailer Defendants leveraged their substantial market power and dominance to induce the Hotel Defendants into agreeing to do one or more of the following: (a) impose minimum resale price maintenance agreements on competing online travel retailers; (b) enforce the price maintenance agreements as to all online travel retailers; and/ or (c) cut off supply to price-cutting online travel retailers.

79.     The Hotel Defendants similarly engaging in a conspiracy to do the following pursuant to an illegal agreement between and amongst themselves did *not* and are *not* simply or unilaterally:

        a.      refraining from selling to uncongenial retailers;

        b.      suggesting resale prices that were widely followed;

        c.      sanctioning, terminating or refusing to sell to retailers who failed to maintain a minimum resale price;

        d.      announcing and enforcing policies of sanctioning, terminating or refusing to sell to retailers who failed to maintain a minimum resale price; or

        e.      sanctioning, terminating or refusing to sell to other retailers following, or in response to, complaints by retailers such as the Website Retailer Defendants.

80.     Rather, the Retailer-Hotel Agreements represent a conscious commitment to a common scheme, designed to achieve an unlawful objective, between the Website Retailer Defendants, the Hotel Defendants and other online travel retailers, who either were part of the conspiracy or knew of the conspiracy and allowed it to continue.

81.     The Hotel Defendants did not act unilaterally or independently, or in their own economic interests, when:

**CLASS ACTION COMPLAINT**                        27

a. entering into the Retailer-Hotel Agreements;

b. seeking online travel retailers' acquiescence to, and compliance with, the terms of the Retailer-Hotel Agreements;

c. seeking to have retailers charge minimum resale prices; or

d. terminating or refusing to sell to online retailers for violating the Retailer-Hotel Agreements. In fact, absent threatened penalties or sanctions by the Website Retailer Defendants, it would not be in the Hotel Defendants' economic interest to enter into, maintain, or enforce the Retailer-Hotel Agreements.

## VI. MONOPOLY/MARKET POWER

82. The Website Retailer Defendants and the Hotel Defendants exercise monopoly power in the market for the online purchase and sale of hotel room reservations. The Website Retailer Defendants have market power and control over the Internet travel market while the Hotel Defendants have market power and control over the hotel market. Combined, the Website Retailer Defendants and the Hotel Defendants can control the prices available for hotel room reservations.

83. The relevant product market in this case is the online retail purchase and sale of hotel room reservations. The relevant geographic market in this case is the United States for the Class and/or the State of California for the California Class.

84. By virtue of their power to control prices and exclude competition in the relevant market(s), the Website Retailer Defendants at all relevant times possessed monopoly power in the relevant market(s). The Website Retailer Defendants and their subsidiaries hold over a 50 percent market share in the Internet travel market. Moreover, the Website Retailer Defendants possess a dominant share of the market(s) for online retail sales of hotel room reservation. The Hotel Defendants have a dominant share of the market(s) for hotel rooms, especially within the United States and the State of California.

CLASS ACTION COMPLAINT                                                     28

## VII.   MARKET EFFECTS OF AND ANTITRUST INJURY DUE TO DEFENDANTS' ANTICOMPETITIVE CONDUCT

85.     The overall effect of Defendants' anti-competitive, exclusionary scheme has been to substantially foreclose and impair competition (and the threat of such competition) for lower-priced hotel room reservations. The conspiracy that the Defendants agreed to was designed to preclude and prevent outside competitors, as well as to ensure that the members of the conspiracy abide by the RPM agreements entered into between and amongst the Website Retailer Defendants and the Hotel Defendants.

86.     As alleged above, had the Defendants not improperly foreclosed or stifled actual or potential competitors from competing in the relevant market, other actual or potential rival retailers would have achieved much greater sales than they actually did (or threatened to do), given the lower prices that they charged (or could have charged upon entry), and would have posed a far greater competitive threat to the Defendants. Additionally, absent the Defendants' exclusionary conduct, barriers to entry to the market would have been lower, which: (a) would have made it easier for existing or new competitors to enter or expand their positions in the relevant market, and (b) would have caused existing or potential competitors to be attracted to the market for hotel room reservations because of the supra-competitive prices that the Defendants were charging. As a result, absent the Defendants' misconduct, the Defendants would have rationally perceived that there was a greater threat of potential competition in the relevant market if the Defendants did not reduce their supra-competitive prices.

87.     The presence of unfettered competition from actual or potential competitors, which were selling lower-priced hotel room reservations, would have forced the Defendants to lower the prices in order to remain competitive and/or to counter a perceived threat of additional entry.

88.     During the relevant time period, Plaintiff and the other members of the Class purchased hotel room reservations directly from the Defendants. As a result of the Defendants' alleged misconduct, Plaintiff and the Class were compelled to pay, and did pay,

Law Offices
OTCHETT, PITRE &
MCCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                                 29

1   artificially inflated prices for the hotel room reservations they purchased. Plaintiffs would

2   have been able to, *inter alia,* purchase less-expensive hotel room reservations had potential

3   competitors been able to engage in unfettered competition. The prices that Plaintiff and the

4   Class paid for hotel room reservations during the Class Period were substantially greater

5   than the prices that Plaintiff and the Class would have paid absent the illegal conduct

6   alleged herein because: (1) the prices of all hotel room reservations were artificially inflated

7   by the Defendants' illegal conduct; and (2) Class members were deprived of the opportunity

8   to purchase hotel room reservations from the Defendants' competitors at substantially lower

9   prices. Thus, Plaintiff and the Class have, as a consequence, sustained substantial damages.

## VIII.   FRAUDULENT CONCEALMENT

89.   Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

90.   Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this civil action.  The Defendants engaged in a campaign of systematic concealment to hide the nature and extent of their conspiracy.

91.   Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

92.   Because of the self concealing nature of Defendants' actions and their affirmative acts of concealment, Plaintiff and the Class assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

93.   Defendants continue to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendants' unlawful conduct. Therefore, each instance that Defendants engaged in the conduct complained of herein and each instance that a member of the Class purchased a hotel room reservation (which is the subject of the Defendants' antitrust conspiracy) constitutes part of a continuing violation and operates to toll

Law Offices
'OTCHETT, PITRE &
MCCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                                                                30

1 | the statutes of limitation in this action.

2 |     94.     Defendants are estopped from relying on any statute of limitations defense
3 | because of their unfair or deceptive conduct.

4 |     95.     Defendants' conduct was and is, by its nature, self-concealing. Still, Defendants,
5 | through a series of affirmative acts or omissions, suppressed the dissemination of truthful
6 | information regarding their illegal conduct, and have actively foreclosed Plaintiff and the Class
7 | from learning of their illegal, anti-competitive, unfair and/or deceptive acts.

8 |     96.     By reason of the foregoing, the claims of Plaintiff and the Class are timely under
9 | any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling
10 | doctrine, and fraudulent concealment.

## IX.   CAUSES OF ACTION

### COUNT I

### VIOLATION OF 15 U.S.C. § 1, *et seq.*
### (AGREEMENTS UNREASONABLY RESTRAINING TRADE)

    97.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though
fully set forth herein.

    98.     The illegal antitrust agreements entered into between and amongst the Website
Retailer Defendants and the Hotel Defendants, and their enforcement, constitute contracts,
combinations and conspiracies that substantially, unreasonably, and unduly restrain trade in the
relevant market(s), and harmed Plaintiff and the Class.

    99.     The illegal antitrust agreements entered into between and amongst the Website
Retailer Defendants and the Hotel Defendants cover a sufficiently substantial percentage of the
relevant market(s) to harm competition.

    100.     The Defendants are liable for the creation, maintenance, and enforcement of the
illegal antitrust agreements under a *per se,* "quick look" and/or rule of reason standard.

    101.     The Defendants possess market power.

    102.     The illegal antitrust agreements entered into between and amongst the
Website Retailer Defendants and Hotel Defendants harm competition by artificially raising

1 | and stabilizing prices.

2 |      103.     There is no legitimate, pro-competitive business justification for the misconduct

3 | of the Defendants, as well as the conspiratorial antitrust agreements entered into between and

4 | amongst the Website Retailer Defendants and the Hotel Defendants, that outweighs their harmful

5 | effect. Even if there were some conceivable justification, the illegal antitrust agreements are

6 | broader than necessary to achieve such a purpose.

7 |      104.     Plaintiff and the Class were injured in their business or property by the

8 | collusion and conspiracy alleged above which facilitated, enabled, assisted or furthered

9 | Defendants' substantial foreclosure and exclusion of competition in the relevant market(s).

10 |      105.     Without limiting the generality of the foregoing, Plaintiffs and the other

11 | members of the Class have been forced to pay higher prices for hotel room reservations than

12 | they would have paid in the absence of Defendants' unlawful conduct.

13 |      106.     The misconduct of the Defendants and the illegal agreements they entered into

14 | are in violation of the federal antitrust laws, including the Sherman and Clayton Antitrust Acts

15 | (15 U.S.C. § 1, *et seq.*)

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CARTWRIGHT ACT**

**(CALIFORNIA BUSINESS & PROFESSIONS CODE §§16720, *et seq.*)**
**(CALIFORNIA CLASS ONLY)**

19 |      107.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though

20 | fully set forth herein.

21 |      108.     The illegal antitrust agreements entered into between and amongst the Website

22 | Retailer Defendants and the Hotel Defendants, and their enforcement, constitute contracts,

23 | combinations and conspiracies that substantially, unreasonably, and unduly restrain trade in the

24 | relevant market(s), and harmed Plaintiff and the Class.

25 |      109.     The illegal antitrust agreements entered into between and amongst the Website

26 | Retailer Defendants and the Hotel Defendants cover a sufficiently substantial percentage of the

27 | relevant market(s) to harm competition.

28 |      110.     The Defendants are liable for the creation, maintenance, and enforcement of the

1   illegal antitrust agreements under a *per se,* "quick look" and/or rule of reason standard.

2          111.    The Defendants possess market power.

3          112.    The illegal antitrust agreements entered into between and amongst the

4   Website Retailer Defendants and Hotel Defendants harm competition by artificially raising

5   and stabilizing prices.

6          113.    There is no legitimate, pro-competitive business justification for the misconduct

7   of the Defendants, as well as the conspiratorial antitrust agreements entered into between and

8   amongst the Website Retailer Defendants and the Hotel Defendants, that outweighs their harmful

9   effect. Even if there were some conceivable justification, the illegal antitrust agreements are

10  broader than necessary to achieve such a purpose.

11         114.    Plaintiff and the Class were injured in their business or property by the

12  collusion and conspiracy alleged above which facilitated, enabled, assisted or furthered

13  Defendants' substantial foreclosure and exclusion of competition in the relevant market(s).

14         115.    Without limiting the generality of the foregoing, Plaintiffs and the other

15  members of the Class have been forced to pay higher prices for hotel room reservations than

16  they would have paid in the absence of Defendants' unlawful conduct.

17         116.    The misconduct of the Defendants and the illegal agreements they entered into

18  are in violation of the federal antitrust laws, including the California Cartwright Act (Cal. Bus.

19  & Prof Code. §§ 16720,*et seq.*)

20                          **THIRD CAUSE OF ACTION**

21            **VIOLATION OF THE UNFAIR COMPETITION LAW**

22      **(CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 16720, *et seq.*)**
        **(CALIFORNIA CLASS ONLY)**

23         117.    Plaintiff hereby incorporates each preceding and succeeding paragraph as though

24  fully set forth herein.

25         118.    Defendants have engaged in unfair competition within the meaning of the

26  California Business & Professions Code §§ 17200 *et seq.* because Defendants' conduct is

27  fraudulent, unfair and unlawful. Defendants misrepresented the fact that they were offering the

28  "best prices" when the reality was that the only price being offered by the Defendants for hotel

1   room reservations was the price that had been artificially manipulated and set by the Defendants.

2       119.    Defendants' business practices are unlawful because they violate federal and

3   California antitrust laws, as well as all of the other federal and California statutes alleged herein.

4       120.    Defendants' business practices are unfair because there is no justification for these

5   improper business practices that outweighs the harm that such business practices inflict upon

6   consumers, including Plaintiff and the Class.  Defendants' business practices and each of them

7   offend established public policy and/or are immoral, unethical, oppressive, unscrupulous

8   and/or substantially injurious to consumers, which harm greatly outweighs any benefit

9   associated with the business practice.  California has an interest in preserving a business

10  environment free of fraud and deceptive business practices.

11      121.    Plaintiff has standing to pursue this claim because he has been injured by virtue

12  of suffering a loss of money and/or property as a result of the wrongful conduct alleged

13  herein.  Plaintiff would not have purchased his hotel rooms nor paid as much for it had he

14  known the truth.

15      122.    Plaintiff and the Class are entitled to relief, including full restitution and/or

16  restitutionary disgorgement, to the greatest extent permitted by law, which may have been

17  obtained by Defendants as a result of such business acts or practices, and enjoining

18  Defendants to cease and desist from engaging in the practices described herein.

19                        **FOURTH CAUSE OF ACTION**

20          **VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**

21                  **(CALIFORNIA CIVIL CODE §§ 1750,*et seq.*)**
                        **(CALIFORNIA CLASS ONLY)**
22

23      123.    Plaintiff hereby incorporates each preceding and succeeding paragraph as though

24  fully set forth herein.

25      124.    The Consumers Legal Remedies Act, Civil Code Section 1750 *et seq.* (hereinafter

26  "CLRA") was designed and enacted to protect consumers from unfair and deceptive business

27  practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in

28  Civil Code Section 1770.

Law Offices
ΌΤCHETT, PITRE &
McCARTHY, LLP    **CLASS ACTION COMPLAINT**                                    34

125. The CLRA applies to Defendants' actions and conduct described herein because it extends to the sale of goods or services for personal, family or household use.

126. At all relevant times, Plaintiffs and members of the Class were "consumers" as that term is defined in Civil Code Section 1761(d).

127. The transactions from which this action arises include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code Section 1761.

128. Each of these defendants represent that their rates are the "Best Price" or a "Low Price," or similar words intended to convey to consumers that the consumer was obtaining a good deal.

129. These representations are false and misleading in that there is no "Best" or "Low" price, just a fixed and uniform price.

130. Defendants' practices in connection with the marketing and sale of online rooms violate the CLRA in at least the following respects:

    a. In violation of Section 1770(a)(5), Defendants knowingly misrepresented the character, uses and benefits of the rooms;

    b. In violation of Section 1770(a)(9), Defendants have knowingly advertised the online rooms with the intent not to sell them as advertised; and

    c. In violation of Section 1770(14), Defendants knowingly misrepresented the legal rights, obligations, or remedies involved in the purchase and sale of online rooms.

131. Defendants' misrepresentations, failure to disclose, and knowing concealment of the prices for hotel rooms are misrepresentations, omissions, and concealments of material fact that constitute unfair and/or deceptive business practices in violation of Civil Code § 1770(a) and caused harm to Plaintiffs and Class members who would not have purchased and/or paid as much for their rooms had they known the truth.

132. In accordance with Civil Code § 1780 (a), Plaintiff and the Class seek injunctive and equitable relief for violations of the CLRA. In addition, after mailing

1   appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiff will

2   subsequently amend this Class Action Complaint to also include a request for damages.

3   Plaintiff and the Class request that this Court enter such orders or judgments as may be

4   necessary to restore to any person in interest any money which may have been acquired by

5   means of such unfair business practices, and for such other relief, including attorneys' fees

6   and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE FALSE ADVERTISING LAW**

**(CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500, *et seq.*)**
**(CALIFORNIA CLASS ONLY)**

133.    Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

134.    Business and Professions Code §§ 17500 *et seq.,* prohibits any person, firm, corporation or association, or any employee thereof, with the intent to dispose of real or personal property, from performing services or inducing the public to enter into any obligation relating to property or services, disseminating an untrue or misleading statement concerning such property or services which the Defendants knew, or in the exercise of reasonable care should have known, was untrue or misleading.  A Court may order injunctive relief and restitution to affected members as remedies for any violations of Business and Professions Code § 17500 as part of the Unfair Competition Law.

135.    At all times herein, Defendants have engaged in disseminating false and misleading communications which misrepresent the characteristics, nature, quality and safety of the services and products being sold to Plaintiff and the Class.  Defendants' business practices include, without limitation:

       a.    Selling to Plaintiff and the Class hotel room reservations at purportedly the "best price" when the prices were in fact set as a result of an illegal antitrust conspiracy;

1  b.  Failing to disclose to Plaintiff and the Class that the Website Retailer
2      Defendants and the Hotel Defendants had engaged in a conspiracy to
3      manipulate the price of hotel room reservations;

4  c.  Engaging in the misconduct as set forth in this complaint, including but
5      not limited to implementing and enforcing illegal and anticompetitive
6      agreements between and amongst the Website Retailer Defendants and the
7      Hotel Defendants;

8  d.  Violating the other statutes and common law causes of action as alleged in
9      this complaint.

10  136.  Defendants engaged in the advertising and the failure to disclose the conspiracy as
11  herein alleged with the intent to induce Plaintiffs to purchase Defendants' products and services.

12  137.  Defendants caused to be made or disseminated throughout California and the
13  United States, through advertising, marketing and other publications, statements that are untrue
14  or misleading, and which were known, or which by the exercise of reasonable care should have
15  been known to Defendants, to be untrue, misleading to consumers and Plaintiffs. Defendants'
16  advertising was untrue or misleading and likely to deceive the public by concealing the nature
17  and existence of the antitrust conspiracy entered into between and amongst the Website Retailer
18  Defendants and the Hotel Defendants to manipulate the price of hotel room reservations.

19  138.  In purchasing hotel room reservations from Defendants, Plaintiff and the Class
20  reasonably believed and/or depended on the material false and/or misleading information
21  provided by Defendants. In other words, Defendants induced Plaintiff and the Class to purchase
22  hotel room reservations using the Website Retailer Defendants and from the Hotel Defendants.

23  139.  In making and disseminating the statements herein alleged, Defendants knew, or
24  by the exercise of reasonable care should have known, that the statements were and are untrue or
25  misleading and so acted in violation of California Business and Professions Code §§ 17500, *et*
26  *seq.* Moreover, Plaintiff and the Class were exposed to Defendants' advertising and its false and
27  misleading statements and were affected by the advertising in that they believed it to be true
28  and/or relied on it when making purchasing decisions.

1  140.   Plaintiff and the Class have suffered injury in fact.  Accordingly, the Court must

2  issue an injunction restraining and enjoining Defendants from sending or transmitting false and

3  misleading advertising to individuals or entities concerning the purported safety and quality of

4  vehicles from Defendants.  Plaintiffs further request an order restoring to Plaintiffs any money or

5  property, real or personal, which may have been lost by means of Defendants' false advertising.

6  ## X.   PRAYER FOR RELIEF

7  WHEREFORE, Plaintiff prays:

8  1.   That the Court determine that the Sherman Act claim alleged herein may be

9  maintained as a class action under Rules 23 of the Federal Rules of Civil Procedure, and that

10  Plaintiff be certified as a class representative and that Plaintiff's counsel be appointed as counsel

11  for the Class; and that the Court also certify a subclass of California residents for violations of

12  California law.

13  2.   That the unlawful conduct, contract, conspiracy or combination alleged herein be

14  adjudged and decreed to be a restraint of trade or commerce in violation of Section 1 of the

15  Sherman Act, as well as a violation;

16  3.   That the unlawful conduct alleged herein be adjudged and decreed to be a

17  fraudulent, unfair or unlawful business practice in violation of the California Unfair Competition

18  Law;

19  4.   That the unlawful conducted alleged herein be adjudged and decreed to be in

20  violation of the California False Advertising Law;

21  5.   That the unlawful conduct alleged herein be adjudged and decreed to be in

22  violation of the Consumer Legal Remedies Act;

23  6.   That the Plaintiff and the Class alleged herein recover damages, to the maximum

24  extent as provided by law, including treble damages, based on injuries sustained and that a joint

25  and several judgment in favor of Plaintiff and the Class be entered against the Defendants;

26  7.   That Defendants, their affiliates, successors, transferees, assignees, and the

27  officers, directors, partners, agents, and employees thereof, and all other persons acting or

28  claiming to act on their behalf or in concert with them, be permanently enjoined and restrained

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**CLASS ACTION COMPLAINT**                                           38

1   from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or

2   combination alleged herein, or from entering into any other conspiracy alleged herein, or from

3   entering into any other contract, conspiracy or combination having a similar purpose or effect,

4   and from adopting or following any practice, plan, program, or device having a similar purpose

5   or effect;

6       8.      That Plaintiff and members of the Class be awarded pre- and post-judgment

7   interest as provided by law, and that such interest be awarded at the highest legal rate from and

8   after the date of service of the initial complaint in this action;

9       9.      That Plaintiff and members of the Class recover their costs of suit, including a

10  reasonable attorney's fee, as provided by law; and

11      10.     That Plaintiff and members of the Class have such other, further, and different

12  relief as the case may require and the Court may deem just and proper under the circumstances.

13  Dated:  October 9, 2012                         Respectfully submitted,

14

15                                                  R. Alexander Saveri

        Guido Saveri (22349)
16      R. Alexander Saveri (173102)
        SAVERI & SAVERI, INC.
17      706 Sansome Street
        San Francisco, CA  94111
18      Telephone: (415) 217-6810
        Facsimile:  (415) 217-6813
19      guido@saveri.com

20      Joseph W. Cotchett (36324)
        Steven N. Williams (175489)
21      COTCHETT, PITRE & MCCARTHY, LLP
        San Francisco Airport Office Center
22      840 Malcolm Road, Suite 200
        Burlingame, CA 94010
23      Telephone:   (650) 697-6000
        Facsimile:   (650) 697-0577
24      jcotchett@cpmlegal.com

25
        Brian J. Barry (135631)
26      LAW OFFICES OF BRIAN BARRY
        1925 Century Park East, Suite 2100
27      Los Angeles, CA 90067
        Telephone:  (323) 522-5584
28      bribarry1@yahoo.com

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated:  October 9, 2012

Respectfully submitted,

Guido Saveri (22349)
R. Alexander Saveri (173102)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813
guido@saveri.com
rick@saveri.com

Joseph W. Cotchett (36324)
Steven N. Williams (175489)
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:      (650) 697-6000
Facsimile:      (650) 697-0577
jcotchett@cpmlegal.com

Brian J. Barry (135631)
LAW OFFICES OF BRIAN BARRY
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (323) 522-5584
bribarry1@yahoo.com

**CLASS ACTION COMPLAINT**                                                                                 40